Argued May 25, reversed and remanded July 30,
reconsideration denied September 6,
petition for review denied November 13, 1979

In the matter of the Compensation of
YOUNGREN,
*Petitioner,*
*v.*
WEYERHAEUSER COMPANY,
*Respondent.*

(WCB No. 78-269, Claim No. 177-505, CA 13162)

597 P2d 1302

Thomas A. Huntsberger, Springfield, argued the cause for petitioner. With him on the briefs were Ackerman & DeWenter, Springfield.

J. W. McCracken, Jr., Eugene, argued the cause and filed the briefs for respondent.

Before Schwab, Chief Judge, Lee, Gillette, Campbell and Peterson, Judge Pro Tempore.

GILLETTE, J.

## GILLETTE, J.

This is a case of denial of workers' compensation benefits. Claimant, frustrated by a disagreement with a fellow employe, struck a large metal drum several times in lieu of striking his fellow employe. In this uneven struggle, the drum won: the employe suffered a broken bone in his left hand. Both the referee and the Workers' Compensation Board denied compensation. We reverse.

The referee found the injury to be self-inflicted, thereby disqualifying the claimant under ORS 656.156(1).[1] On *de novo* review, however, we are satisfied that the claimant intended only to vent frustration, not injure himself, and that ORS 656.156(1) is therefore not applicable.

Our determination under ORS 656.156(1) leaves two other issues: (1) The referee found that the injury did not "arise out of and in the course of" the claimant's employment. (2) The Board, while disagreeing with the referee and finding that the injury *did* "arise out of" claimant's employment, nonetheless concluded that the injury did not occur "in the course of" such employment, and so affirmed the referee's denial of benefits. The requirement that, to be compensable, an injury "arise out of and in the course of" employment appears in ORS 656.005(8)(a).[2]

With respect to whether the injury "arose out of" claimant's employment, the evidence shows that the

---

[1] ORS 656.156(1) provides:

"(1) If injury or death results to a worker from the deliberate intention of the worker himself to produce such injury or death, neither the worker nor the widow, widower, child or dependent of the worker shall receive any payment whatsoever under ORS 656.001 to 656.794."

[2] ORS 656.005(8)(a) provides:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means."

incident in question occurred when a fellow employe boarded up an exit from the work area, which action made claimant's job more difficult. The fellow employe then seemed prepared to use physical violence against claimant if claimant tried to rectify the situation. We agree with the Board, which said,

"* * * the fact that claimant's employment required him to work with this co-employee and that such employment * * * [might give] rise to circumstances * * * result[ing] in a dispute between claimant and his co-employee over a work-related matter occurring on the employer's premises would satisfy the test that the injury 'arose out of' the claimant's employment."

The Board went on to hold, however, that

"* * * claimant was not engaged in any of the duties for which he was paid at the time of the injury nor was he at his regular work station[. T]herefore, the injury did not arise 'in the course of' claimant's employment."

With this later conclusion, we disagree. The record here shows that the altercation between claimant and his fellow employe occurred at a place where claimant would normally be expected to be "in the course of" his employment. His departure from that place and his almost immediate encounter with the steel drum, while not on a route designed to carry claimant directly back to his duty station, were nonetheless so closely connected in time and space with the altercation that we find them to have occurred within the scope of claimant's employment. From the context in which it arose, we view claimant's actions here as not being generically different from the reaction of a machinist who, discovering he had made an error in a long and complicated piece of work, might strike his own lathe in frustration and accidentally break a hand. We view this case as vastly different from our recent decisions in which employes have, after an opportunity to coolly deliberate their course of action, so far departed from reasonably expected behavior

that their resulting injuries were declared non-compensable. *See e.g., Sumner v. Coe*, 40 Or App 815, 596 P2d 617 (1979); *Lane v. Gleaves Volkswagen*, 39 Or App 5, 7-8, 591 P2d 368 (1979).

Reversed and remanded.[3]

**LEE, J., dissenting.**

The result reached by the majority condones immature conduct. I would affirm the Workers' Compensation Board's denial of benefits because, as the Board found, claimant was not acting within his "course of employment" at the time that he struck the barrel.

Claimant was employed to patch defects in plywood panels. To ensure a free flow of glue from the applicator hose, it was the practice to periodically eject some of the adhesive into a bucket. The bucket of waste glue was from time to time emptied in a vat outside the plant. The most direct access to that vat was through a hole in the side of the building. This exit hole was used with the knowledge and consent of claimant's foreman. The hole was kept open in the summer for ventilation and was closed during cold weather by a 4' × 8' sheet of plywood secured with a fastener.

On the evening of December 8, 1977, claimant carried a bucket of glue to the exit, removed the plywood panel and emptied the bucket in the outside vat. While claimant was returning to his work station for a second bucket of glue, a fellow workman told claimant that he was going to nail the exit closed.[1] Claimant returned to his station and picked up the second bucket of glue, then proceeded to the exit where he found the fellow worker nailing the panel to the wall.[2] Claimant tried, unsuccessfully, to rip the panel

---

[3] The cross-appeal raises no additional issues.

[1] The fellow workman acted on his own initiative without any authorization from his foreman, apparently to avoid the cold air.

[2] The next closest route to empty the bucket was through the electrician's shack, which involved the opening of three doors and a relatively longer walk to the outside vat.

off and then proposed that they consult the foreman about it. In a threatening manner, the fellow workman declined to do so. Claimant then kicked the second bucket of glue (which weighed approximately 40 pounds) causing it to tip over. *Next,* claimant walked a distance of approximately ten feet to a steel drum (estimated to weigh approximately 700 pounds including contents) and struck it three times with his right hand and three times with his left hand. Claimant fractured a bone in his left hand for which injury he seeks compensation.

ORS 656.005(8)(a) provides in pertinent part:

"A 'compensable injury' is an accidental injury * * * *arising out of* and *in the course of employment* requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means." (Emphasis supplied.)

At the time claimant was injured he was not engaged in any of the duties for which he was being paid, nor was he at his work station. Claimant's striking of the barrel was clearly not "in the course of" his employment. *Cf. Hackney v. Tillamook Growers*, 39 Or App 655, 593 P2d 1195 (1979), and *Frosty v. SAIF*, 24 Or App 851, 547 P2d 634 (1976).

Accordingly, I respectfully dissent.