# Supreme Court of the Navajo Nation

Ella Mae Tso (Dec.) , *et al.,* and
Survivors of Harold Tsosie (Dec.), *Petitioners,*
*vs.*
The Workmen's Compensation Employee Benefit
Review Board of the Navajo Nation, *Respondent*
Decided July 28, 1986

## OPINION

*Before Tso, Chief Justice, Bluehouse and Austin, Associate Justices.*

*Raymond Tso, Esq., Crownpoint, New Mexico and Spencer K. Johnston, Esq., Phoenix, Arizona for the Petitioners; William Riordan, Esq., Navajo Nation Department of Justice, Window Rock, Arizona for the Respondent.*

*Opinion delivered by Austin, Associate Justice.*

Claimants, the dependent survivors of Harold Tsosie, seek review of the denial of their claim for Workmen's Compensation Benefits. They contend that (1) the death of Harold Tsosie arose out of and in the course of his employment, and (2) the Workmen's Compensation Employee Benefit Review Board erred by considering as relevant, events and circumstances, which preceded the emergency causing Harold's death. The Claimants also contend that the deceased Ranger is a public safety officer. We affirm the decision of the Board.

Harold Tsosie was employed by the Navajo Nation as Ranger I. These were his duties:

Example of duties:

Assists in the restocking of fish in reservation lakes; patrols and enforces fishing, hunting, boating regulations; assists in the protection and preservation of reservation wildlife; enforces timber tree cutting regulations; assists forestry with fire

prevention; assists in the protection of prehistoric scenic beauty and scientific sites; renders first aid when necessary; assists in emergency, search and rescue operations; provides assistance or information to visitors; maintains records and prepares reports of activities. (Job description for Ranger I).

Harold Tsosie was on compensatory leave, therefore he was not on duty nor was he subject to call on the date of his death. Harold and his brother Jeff drowned in Sawmill Lake on the afternoon of June 11, 1982. The victims had engaged in substantial drinking the night before and on the day of their deaths. A blood alcohol sample taken from Harold was lost during transmission to the laboratory.

Harold's employer issued him a tribal ranger vehicle and equipment consisting of a life jacket, a flotation device, a first aid kit, a spool of rope and a two-way radio. Harold had removed the equipment, radio antenna, and the emblems identifying the tribal vehicle before transporting his brothers and friends to the lake in the ranger vehicle. Beer was consumed by the group on the trip to the lake and at the lake. The male members of the group decided to swim. Immediately thereafter, Harold's brother Pat, began inducing Jeff, the other brother, to swim across the lake. Jeff swam about three-fourths across the lake before he started struggling. Harold, who was taking off his clothes, was alerted to the emergency, and he plunged into the lake to effect a rescue. In attempting rescue, Harold and his brother drowned. Harold was not trained or qualified in water rescue operations as a Ranger I. In its findings the Board concluded that Harold and his friends had gone to the lake to swim and engage in their own personal social activities.

An award under the Workmen's Compensation Laws of the Navajo Nation is governed by statute. By law the Claimants must prove (1) that the death was a result of an accident; and (2) that the death arose out of the employment; and (3) that the death arose while in the course of employment. 15 N.T.C. § 1021. Clearly the statute requires that a claimant prove all its elements to effect recovery. Here there is no dispute that Harold Tsosie died as a result of an accident.

The Navajo Workmen's Compensation Act is not founded upon Navajo traditional notions of compensation, although the Navajo practice of reparation to an injured party may parallel compensation pursuant to the Act. Instead the Navajo Workmen's Compensation Laws are based upon their state counterparts. Consequently, non-Navajo sources are ideal for clarification and guidance.

Upon proper proof Section 1021 awards benefits for work connected injury or death which "arose out of" the employment and are sustained "in the course of" the employment. Established sources have construed "arose out of" to refer to the origin or cause of the injury, and "in the course of" to

refer to the time, place, and circumstances under which the injury occurred. *Goodyear Aircraft Corporation v. Gilbert,* 65 Ariz. 379, 181 P. 2d 624 (1974); *Royall v. Industrial Commission,* 106 Ariz. 346, 476 P. 2d 156 (1970); 1 Larson, Workmen's Compensation Law § 610 (rev. ed. 1985). The Navajo Nation adheres to the same construction by statute. At 15 N.T.C. § 1002 (b), course and scope of employment is defined as: "the time, place and circumstances under which the accident occurred."

The purpose of Workmen's Compensation is to assist injured workers. With that in mind, each case must be studied on its own set of facts to determine if the accident arose out of and in the course of employment. See *Food Products Corporation v. Industrial Commission,* 129 Ariz. App. 208, 630 P. 2d 31 (1981); *Royall v. Industrial Commission,* 106 Ariz. 346, 476 P. 2d 156 (1970). The "arising" and "course" tests involve consideration of different factors as mentioned above. However, to effectuate its purpose of assisting injured workers, it is often necessary to consider these factors together to determine sufficient "work connection" to enable a claimant to recover. See 1 Larson, Workmen's Compensation Law § 610 (rev. ed. 1985).

In this case we begin with whether Harold Tsosie died in the course of his employment. If Harold died doing what a person so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time, then we are convinced that Harold died in the course of his employment. See *City of Phoenix v. Industrial Commission,* 104 Ariz. 120, 449 P. 2d 291 (1969). In essence the question centers on whether Harold was on duty when he died. It is undisputed that Harold Tsosie was on leave from work and he was not on call for duty at the time of his death. Voluntarily removing all "duty" equipment from the vehicle, including the antenna and emblems identifying the vehicle, shows that Harold considered himself off duty and not subject to call. Harold's presence at the lake was not motivated by his employer nor by his intent to perform any of his enumerated duties. (For example enforcing fishing regulations.) We agree with the Board that Harold and his friends were engaging in personal social activities, outside the course of his employment, when he died.

The Claimants, however, urge us to classify Harold as a public safety officer and apply the emergency rule consistent with *Conley v. Industrial Commission,* (Colo. App.), 601 P. 2d 648 (1979). There a police officer's death was held compensable, when the officer was killed while directing traffic during a flood, even though the officer was off duty prior to the onset of the emergency. The Court emphasized that the police officer was "on call" twenty-four hours a day, seven days a week, and the officer died performing duties that a police officer would ordinarily perform in conjunction with such an emergency. Navajo police officers are public safety

officers. They complete formal police training at the Navajo Police Academy. In contrast, Harold Tsosie lacked the requisite police training to be classified as a public safety officer. More experienced Navajo Rangers do complete formal police training at the academy but Harold was not among them. Harold Tsosie was a Ranger I and not a public safety officer therefore the reasoning in *Conley* is inapplicable. Further the facts show that Harold was not "on call" twenty-four hours a day, seven days a week, and he was not performing his duties at the time of his death like the officer in *Conley.* The emergency rule would apply if Harold's employment brought him to the lake where he encountered a moral obligation to effect a rescue. That was not the case here.

The final issue concerns consideration of relevant evidence by the Board. The Claimants argue that only events which succeeded the onset of the emergency are relevant since Harold was "pulled" into duty by the emergency. First, we disagree with Claimants in light of 15 N.T.C. § 1010 (d), which gives the Board authority "to perform such discovery activity as may be deemed necessary to fully explore *all* aspects surrounding the occurrence and injury." (Emphasis supplied). And the Board "may conduct investigations in such a manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of this chapter." 15 N.T.C. §1010 (e). Clearly the Tribal Council gave the Board broad powers of review to fully explore all aspects surrounding the accident while carrying out the intent of the Navajo Workmen's Compensation Act. Second, we agree with the respondent that the employment does not arise out of the emergency.

For these reasons the award of the Workmen's Compensation Review Board denying compensation is affirmed.

Tso, Chief Justice and Bluehouse, Associate Justice concur.